# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 11-1789 JB

BRANDON HRONICH,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Petition for Revocation of Supervised Release, filed September 24, 2024 (Doc. 62)("Petition"). The Court held an evidentiary hearing on February 26, 2025. See Clerk's Minutes at 1, filed February 26, 2025 (Doc. 85)("February 26 Minutes"); Draft Hearing Transcript at 1, taken February 26, 2025 (Court)("Hearing Tr.")[1]. The primary issue is whether Defendant Brandon Hronich violated the condition of supervised release requiring that Hronich attend and participate in sex offender treatment, when he fully attends and partakes in all required activities, but has no intention of changing his dangerous thoughts about sex and children. The Court denies the Petition because even though Hronich harbors negative feelings towards sex offender treatment, he attends and participates to the extent required, and does not violate the condition's plain language.

## FACTUAL BACKGROUND

The Court describes Hronich's original crime and the judgment. The Court adopts facts in the Presentence Report, filed April 16, 2025 (Doc. 87)("PSR"), as its findings of fact. See Federal

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact.").

1.     **The Crime.**

In July 2010, a New Mexico State Police investigation discovers Hronich's IP address distributing child pornography via peer-to-peer file sharing software.  See PSR ¶ 10-12, at 5. Pursuant to a search warrant, law enforcement seizes numerous of Hronich's electronic devices containing hundreds of illicit pornographic images and videos.  See PSR ¶ 13, at 6.  At the time of the search, Hronich confesses to downloading, storing, and sharing child pornography using Qwest internet service, and confirms that the images are his.  See PSR ¶ 14, at 7.

2.     **Prior Convictions and Personal Background.**

Also at the time of the search, Hronich admits that he has a prior military conviction for possessing and receiving child pornography.  See PSR ¶ 14, at 7.  A forensic analysis reveals over 1,900 possible child pornography images on Hronich's computer, with extremely violent and graphic content.  See PSR ¶ 42, at 15-18.  Hronich acknowledges that others can download from his shared files.  See PSR ¶ 19, at 9.  Hronich has no other criminal convictions.  See PSR at 17. Hronich also has no reported mental health issues, no familial history of mental health issues, no reported substance abuse issues, and no reported use of illegal substances.  See PSR ¶¶ 55-58, at 20.  Hronich was "generally cooperative" during the investigation.  PSR ¶ 55, at 20.  Hronich graduated from Cimarron High School in Cimarron, New Mexico, with a 3.347 grade point average in 2002, where he reports being on an Individualized Education Plan for an undiagnosed learning disability, and where he was on the track team.  See PSR ¶¶ 60-61, at 21.

## PROCEDURAL BACKGROUND

The Court describes Hronich's Judgment and sentence. Then, the Court describes the events leading up to his first revocation of supervised release. Finally, the Court describes the event leading up to the petition for his second revocation of supervised release.

### 1.    The Judgment.

On July 7, 2011, Hronich pleads guilty to receipt of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). See PSR ¶ 1, ¶ 3-5, at 2-3. On October 3, 2011, the Honorable Bruce D. Black, Chief United States District Judge for the District of New Mexico, sentences Hronich to 120 months custody, followed by a lifetime of supervised release for Receipt of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, 18 U.S.C. § 2252(a)(2), 18 U.S.C. § 2252(b)(1) and 18 U.S.C. § 2256. See Judgment ¶ 17, at 1-4, filed October 22, 2011 (Doc. 28)("Judgment"). Chief Judge Black orders that Hronich participate in sex offender treatment as a special supervised release condition. See Judgment at 3-4. The special condition states that "the defendant shall immediately undergo a psychosexual evaluation upon release and begin participating in sex offender treatment, consistent with the recommendations of the psychosexual evaluation." Judgment ¶ 17, at 4.

### 2.    The First Revocation of Supervised Release.

On May 31, 2019, Hronich commences his term of supervised release in the District of New Mexico. See Petition for Revocation of Supervised Release at 1, filed July 21, 2022 (Doc. 38)("2022 Revocation Petition"). On July 21, 2022, the United States Probation Office ("USPO") files an initial Petition for Revocation of Supervised Release alleging his possession of pornography, unauthorized contact with minors, and possessing an unauthorized internet capable device. See 2022 Revocation Petition at 1-3. On October 19, 2022, the Court revokes supervised

release and sentences Hronich to 8 months, followed by a lifetime of supervised release.  See

Clerk's Minutes at 1, filed October 19, 2022 (Doc. 58).

      **3.**      **The Petition for a Second Revocation of Supervised Release.**

On March 21, 2023, Hronich commences his second lifetime term of supervised release

and receives treatment services at Castillo Psychological in Las Cruces, New Mexico.  See Petition

for Revocation of Supervised Release at 1-2, filed September 24, 2024 (Doc. 62)("2024

Revocation Petition").  On September 3, 2024, Hronich attends a sex offender treatment meeting

at Castillo Psychological with his counselor, Joe Castillo.  See Violation Report at 1.  At the

meeting, Hronich discloses that he has been recording secretly home-visit conversations with

United States Probation Officer Andrea C. Hernandez for almost one year.  See Violation Report

at 1.  The Violation Report elaborates:

> When confronted as to the purpose of the recordings, the defendant explained he
> has been "hurt" with probation and felt it necessary to protect himself.  This officer
> expressed concern in that the behavior demonstrated a regression in treatment, as
> he has manipulated his status in treatment, giving the desired effect of progress,
> while also using thinking distortions and justification to vindicate his behavior.

Violation Report at 1.  Less than a week later, on September 9, 2024, Castillo Psychological

notifies USPO that Hronich is "unsuccessfully terminated from sex offender treatment services."

Violation Report at 1.  Castillo Psychological's letter states:

> Since the time of his actions, Mr. Hronich has maintained secretive and
> manipulative behavior.  He has not been transparent in his communication and
> refused to disclose his actions to gain insight while in treatment.  Mr. Hronich has
> shown continued dismissal of therapeutic goals which increases the risk of re-
> offense.
>
>       Mr. Hronich shows his ability to maintain a duality of life to have the
> appearance of stability.  It is with this duality of life that Mr. Hronich is capable of
> manipulating as he creates the illusion of progress.  His use of criminal thinking
> and manipulation increase his risk to move beyond that of viewing images of child
> sexual assault and into the capability of a contact offense.  Mr. Hronich [sic] most

recent disclosure of using his cell phone to record conversations in a secretive manner over an extended period of time displays his ability to plan, hide and attempt to gain power and control. All of which are the same characteristics he displayed at the time of his first release and his most recent violation in which he admitted to viewing images of child pornography. This continued behavior increases his dangerousness in the community.

Letter from Joe A Castillo, LCSW, CCFC, CCSOTS to Officer Andrea Hernandez at 1 (dated September 9, 2024), filed February 26, 2025 (Doc. 85 at 6-7)("Castillo Letter").

USPO Officer Hernandez files a second Petition for Revocation of Supervised Release, alleging that Hronich violates his special supervised release condition, i.e., sex offender treatment, because of his unsuccessful termination from Castillo Psychological. See Petition at 1.

4. **Court Proceedings on the Petition for a Second Revocation of Supervised Release.**

After USPO Officer Hernandez files the Petition, the Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico, holds a Preliminary Revocation/Detention Hearing. See Clerk's Minutes for Preliminary Revocation/Detention Hearing at 1, filed October 4, 2024 (Doc. 73)("October 4 Clerk's Minutes"). Magistrate Judge Fashing finds probable cause that Hronich violates his special condition, releases Hronich from custody under local GPS monitoring and curfew conditions, and refers the matter to the Court. October 4 Clerk's Minutes at 1. See February 5 Memo at 1. Neither the Plaintiff United States nor Hronich submit briefing.

5. **The Evidentiary Hearing.**

The Court holds an evidentiary hearing on February 26, 2025. See February 26 Minutes at 1; Hearing Tr. at 1. At the hearing, the United States calls three witnesses: USPO Officer Hernandez, Dr. Joe Castillo, and licensed clinical social worker Kristen Muniz. See Hearing Tr. at 2 (Fontanez). Hernandez testifies about being Hronich's probation officer and his prior history

on supervised release leading up to the petition for a second revocation of supervised release. See Hearing Tr. at 13-17 (Fontanez, Hernandez). Hernandez testifies about her supervision of Hronich during his second term of supervised release. See Hearing Tr. at 29-32 (Fontanez, Hernandez). Hernandez then testifies about how Hronich secretly records conversations with Hernandez, and how ultimately Castillo Psychological terminates Hronich's treatment. See Hearing Tr. at 33-38 (Fontanez, Hernandez). Hernandez also testifies about how Hronich seeks sex offender treatment elsewhere after his termination from Castillo Psychological, including at Vibe Wellness and Counseling World. See Hearing Tr. at 39-49 (Fontanez, Hernandez).

Dr. Castillo testifies about his experience working with Hronich for sex offender treatment at Castillo Psychological. See Hearing Tr. at 75 (Fontanez, Castillo). Dr. Castillo testifies about Hronich's behavior, his attitude towards treatment, his lack of progress, and his level of risk to the community. See Hearing Tr. at 75-139. Dr. Castillo testifies that Hronich's current level of care is not sufficient, and recommends that Hronich receive a higher level of care through an inpatient program. See Hearing Tr. at 90-91 (Fontanez, Castillo). Muniz testifies about her experience working with Hronich for sex offender treatment at Counseling World. See Hearing Tr. at 145 (Fontanez, Muniz). Muniz testifies about sessions with Hronich, his deviant thoughts that he shares during sessions, the results of Hronich's screening tests, and his high risk of recidivism. See Hearing Tr. at 147-173 (Fontanez, Muniz).

**FINDINGS OF FACT**

Based on the evidentiary hearing, the Court makes the following findings of fact related to the issues. Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its essential findings on the record when deciding a motion that involves factual issues. See Fed. R. Crim. P. 12(d)("When factual issues are involved in deciding a motion, the court must state its

essential findings on the record.").  The findings of fact in this Memorandum Opinion and Order

serve as the Court's essential findings for rule 12(d)'s purposes.  In making these findings, the

Court does not consider any evidence or testimony from the hearing that violates the balancing

test that the United States Court of Appeals for the Tenth Circuit adopts in United States v. Jones,

818 F.3d 1091, 1098 (10th Cir. 2016).  See United States v. Hernandez, 428 F. Supp. 3d 775, 788

(D.N.M. 2019)(Browning, J.)("When applying the balancing test, the Court must weigh the

defendant's interest in cross-examining and confronting [a] witness with the government's good

cause for not presenting the witness.")(citing United States v. Jones, 818 F.3d at 1098)).  At the

hearing, both parties conduct direct and cross-examination of the witnesses USPO Officer

Hernandez, Dr. Castillo, and Muniz, who testify about Hronich's participation in sex offender

treatment services.  See Clerk's Minutes at 2.   The Court makes the following findings of fact

from the hearing.

      **1.**      **<u>Initial Supervised Release and Early Sex Offender Treatment</u>.**

      1.      In 2019, just before supervised release, Hronich accesses pornography at the

Community Workforce Connections Agency.  See Hearing Tr. at 17 (Hernandez).

      2.      As a result, the USPO requests a supervised release condition modification to begin

his supervised release at a halfway home in Las Cruces, New Mexico.  See Hearing Tr. at 17-18

(Hernandez).

      3.      Hronich starts supervised release at the halfway home.  See Hearing Tr. at 17

(Hernandez).

      4.      Hronich starts sex offender treatment at Castillo Psychological Services and

receives an overall risk assessment of a high risk to recidivism.  See Hearing Tr. at 18 (Hernandez).

5.      Castillo Psychological Center is USPO's only treatment provider for sex offenders in Las Cruces.  See Hearing Tr. at 27 (Hernandez).

6.      Hronich works with Dr. Joe Castillo, Ph.D., the clinical director of the sex offender program at Castillo Psychological.  See Hearing Tr. at 68-72 (Castillo).

7.      Dr. Castillo is a New Mexico-licensed social worker with over ten years of experience in sex offender treatment services.  See Hearing Tr. at 68-69 (Castillo).

8.      In total, Dr. Castillo works with Hronich for over 600 hours.  See Hearing Tr. at 83 (Castillo).

9.      Hronich has an I.Q. of 118.  See Hearing Tr. at 135 (Castillo).

10.     Hronich initially engages in individual and weekly group sessions, and at first appears to adjust well throughout 2019.  See Hearing Tr. at 18-19 (Hernandez); id. at 75 (Castillo).

11.     Towards the end of 2019, Hronich gains privileges such as traveling back home to visit family, and monitored computer access.  See Hearing Tr. at 19-20 (Hernandez); id. at 75 (Castillo).

12.     In January, 2020, Hronich has unauthorized contact with his nieces, who are minors.  See Hearing Tr. at 19 (Hernandez).

13.     In November, 2020, Hernandez takes over as Hronich's USPO Officer.  See Hearing Tr. at 14 (Hernandez).

14.     In early 2021, monitoring software indicates that Hronich accesses prohibited software, specifically a "CC Cleaner," which erases computer history and can potentially conflict with the monitoring software.  Hearing Tr. at 22 (Hernandez).

2.    __The Polygraph Tests__.

15.    In April, 2022, Hronich takes a polygraph test and discloses accessing erotic stories about boys and anime pornography, and using an unauthorized telephone.  See Hearing Tr. at 23 (Hernandez).

16.    A following search by USPO of Hronich's home reveals items including a tarp, rope, shovel, and blankets.  See Hearing Tr. at 24 (Hernandez).

17.    These items are consistent with Hronich's prior assessment through Castillo Psychological that Hronich has deviant fantasies, involving torture, imprisonment, and rape.  See Hearing Tr. at 24 (Hernandez).

18.    Hronich has and admits that he has a "fixated attraction" to young minors.  Hearing Tr. at 79 (Castillo).

19.    A fixated attraction is an innate attraction that cannot be changed, but rather must be "consistently maintained."  See Hearing Tr. at 79 (Castillo).

20.    Hronich also is a sadistic sex offender, meaning that his fixated attraction is not about sex, but about the bondage and torture leading up to murder.  See Hearing Tr. at 155 (Muniz).

21.    Hernandez requests a supervised release condition modification to place Hronich on GPS monitoring, because USPO "had concerns with community safety."  Hearing Tr. at 24 (Hernandez).

22.    USPO places Hronich on GPS monitoring, and Hronich tells people that he is on electronic monitoring.  See Hearing Tr. at 115 (Castillo).

23.    Three months later, Hronich reveals in a subsequent polygraph test that he accesses his employer's computer for over a year and actively downloads child pornography on those computers.  See Hearing Tr. at 25 (Hernandez).

24.     In one of the polygraph tests, Hronich admits that he has been around his niece and nephew.  See Hearing Tr. at 108 (Castillo).

**3.      The Second Supervised Release.**

25.     In October, 2022, at the first revocation hearing, the Court sentences Hronich to 8 months' custody.  See Clerk's Minutes at 1, filed October 19, 2022 (Doc. 58).

26.     In March, 2023, Hronich commences supervised release again in Las Cruces at the halfway house with GPS monitoring.  See Hearing Tr. at 26 (Hernandez).

27.     Hronich again receives treatment at Castillo Psychological Center.  See Hearing Tr. at 26 (Hernandez).

28.     In September, 2023, Hronich remains on GPS monitoring for an additional 180 days after Hernandez requests a supervised release condition modification "based on his limited to no progress" in treatment services with Castillo.  See Hearing Tr. at 28 (Hernandez).

29.     Throughout treatment sessions, Hronich divulges "vulnerable thoughts," Hearing Tr. at 103 (Castillo), and "always" speaks about his ideations, Hearing Tr. at 113 (Castillo).

30.     Hronich also tells Castillo about relapses after they occur.  See Hearing Tr. at 113 (Castillo).

31.     Hronich does not deny his attractions, deviant fantasies, or behavior.  See Hearing Tr. at 128 (Castillo).

**4.      The Secretly Recorded Sessions with Hernandez, Treatment Termination, and Revocation Petition.**

32.     Hronich admits to Dr. Castillo during a treatment session that between October, 2023, and August, 2024, he secretly records his conversations with Hernandez during home visits without her knowledge or consent.  See Castillo Letter at 1; Hearing Tr. at 33-34 (Hernandez).

33.    Hronich plays an excerpt of a recording to Dr. Castillo, and tells Dr. Castillo that he makes the recordings to try to protect himself and feels that Hernandez is unfair to him with the supervision conditions.   See Hearing Tr. at 35, 122-23 (Hernandez).

34.    Hronich's "C-Port" risk score, which results from a risk assessment test for people convicted of viewing images of child sexual assault, increases from 5/7 to 6/7 between 2019 and 2023.  See Hearing Tr. at 74 (Castillo).

35.    Typically, risk levels decrease with more treatment.   See Hearing Tr. at 74-75 (Castillo).

36.    Castillo Psychological terminates Hronich in September, 2024, because of: (i) no meaningful progress from 2019 to 2023; and (ii) escalating risk factors.  See Castillo Letter at 1.

37.    Hernandez is not involved in the decision to terminate Hronich.   See Hearing Tr. at 37-38 (Hernandez).

**5.    Enrollment in Counseling World and Evaluation.**

38.    After Hronich's termination from Castillo Psychological, Hronich receives a referral to Counseling World.  See Hearing Tr. at 148 (Muniz).

39.    Counseling World is a certified contractor with the USPO.  See Hearing Tr. at 146 (Muniz).

40.    Kristin Muniz is a licensed clinical social worker and certified sex offender treatment professional who worked at Counseling World.  See Hearing Tr. at 144-145 (Muniz).

41.    In October, 2024, a Counseling World employee administers the Sex Offender Treatment Intervention and Progress Scale ("SOTIPIS") evaluation to Hronich, and Hronich receives an 18, which is high for someone who has been in sex offender therapy.  See Hearing Tr. at 149 (Muniz).

42.     Hronich self-reports in the SOTOPIS that he masturbates to deviant sexual fantasies and uses them as a way to relieve stress.  <u>See</u> Hearing Tr. at 149 (Muniz).

**6.    <u>Disclosure of Disturbing Sexual Fantasies to Muniz.</u>**

43.     After initial assessment, Hronich is assigned to Muniz for sex offender treatment and receives treatment via Zoom.  <u>See</u> Hearing Tr. at 145, 146 (Muniz)

44.     On November 8, 2024, Hronich has his first meeting with Muniz.  <u>See</u> Hearing Tr. at 145 (Muniz).

45.     Hronich talks about the following with Muniz:

> his struggles with his deviant sexuality, the violent sexual fantasies that he experiences involving torture, rape, and murders of males ages 4 to 8.  He told me at that time he preferred boys ages 8 to 12, but this had recently decreased.  In the fantasies, it was about the pain, the shock, and the look of horror on the faces.  It was nothing about the sex itself.

Hearing Tr. at 147 (Muniz).

46.     Hronich has two recurring sexual fantasies involving minors that he consistently reports to Muniz.  <u>See</u> Hearing Tr. at 153 (Muniz).

47.     In the first fantasy, Hronich teleports into a school bathroom and kidnaps a young child.  <u>See</u> Hearing Tr. at 154 (Muniz).  His preferred age range is four to eight, but he tells Muniz that there is no age too young.  <u>See</u> Hearing Tr. at 153-54 (Muniz).

48.     He takes the child to an underground cave where he sexually abuses them, tortures them, binds them, and rapes them.  <u>See</u> Hearing Tr. at 154 (Muniz).

49.     He then achieves an orgasm.  <u>See</u> Hearing Tr. at 154 (Muniz).

50.     In the second fantasy, Hronich kidnaps a young male child, strips him of clothes, blindfolds him, and takes him to an underground labyrinth.  <u>See</u> Hearing Tr. at 154-55 (Muniz).

51.    Hronich follows the child through the labyrinth in the dark as they encounter different monsters, such as centaurs and other mythical creatures.  See Hearing Tr. at 154-55 (Muniz).

52.    He follows them with a camera or with night vision goggles.  See Hearing Tr. at 154-55 (Muniz).

53.    Hronich then abuses them and tortures them, and orgasms.  See Hearing Tr. at 154-55 (Muniz).

54.    Hronich says that he never murders them, because he orgasms before the point of murder.  See Hearing Tr. at 154-55 (Muniz).

55.    Hronich discloses urges to view child pornography as recently as February 10, 2025, which is when Hronich had his last meeting with Muniz.  See Hearing Tr. at 158 (Muniz).

56.    Hronich still attends sex offender treatment sessions at Counseling World.  See Hearing Tr. at 174 (Muniz)("There has been no recommendation to discontinue services.").

**7.    Simultaneous Enrollment in Viibe Wellness**

57.    In January, 2025, Hronich also seeks sex offender treatment at Viibe Wellness, a non-federally approved provider, without notifying USPO.  See Hearing Tr. at 39-41 (Hernandez).

58.    Hronich's therapist at Viibe Wellness is Tally Mae Weeks.  See Hearing Tr. at 156 (Muniz).

59.    Hronich receives duplicate sex offender treatment at Counseling World and Viibe Wellness.  See Hearing Tr. at 166 (Muniz).

60.    Providing duplicate services is an ethical violation, and providers can potentially lose their license.  See Hearing Tr. at 164-67 (Muniz).

## LAW REGARDING SUPERVISED RELEASE

A district court's decision making with regard to violations of supervised release conditions comes in two phases. First, at sentencing, the court must decide whether to impose a term of supervised release and, if so, how long a term to impose and what conditions to associate with it. Second, while the defendant is on supervised release, if the United States accuses the defendant of violating a condition of supervised release, the Court must determine whether the defendant has violated the conditions, whether to revoke supervised release, and, if so, what disposition to impose for the violation.

1.    **Imposition of Supervised Release.**

A court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may [and sometimes must] include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a). As part of a defendant's supervised release, he is legally bound to abide by certain conditions of his release. See 18 U.S.C. § 3583(d). Section 3583 of Title 18 of the United States Code sets forth some of the standard and discretionary conditions that courts shall and may impose as part of supervised release:

> **Conditions of supervised release.** -- The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that

- 14 -

the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4). The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition --

 **(1)** is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

 **(2)** involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

 **(3)** is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to

search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

18 U.S.C. § 3583(d).

Thus, § 3583 specifies standard and discretionary conditions of supervised release, while elsewhere Congress provides for other conduct which, if a defendant commits on supervised release, can result in a revocation of supervised release. Among others, § 3583 provides that the defendant not commit another federal, State, or local crime during the term of supervision, that the defendant not possess any controlled substances, and that the defendant cooperate in the collection of a DNA sample. See 18 U.S.C. § 3583(d). Further, § 3583 permits a court to craft special conditions of supervised release that it deems appropriate. See 18 U.S.C. § 3583(d). Among those conditions not listed in § 3583 is that supervised release may be revoked if the defendant fails to pay a fine or restitution that the court has imposed. See 18 U.S.C. § 3613A ("Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release . . . .").

In "determining whether to include a term of supervised release, and if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release," the court "shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(c).[2]

---

[2]The Court will discuss these eight specific § 3553(a) factors in the next two sections, which focus on a district court's re-imprisonment of a defendant following revocation of a term of supervised release under § 3583(e). A district court must consider these same eight factors in both contexts. It should be noted that 18 U.S.C. § 3583(c) omits § 3553(a)(2)(A), which requires a district court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Judge

2.    __Revocation of Supervised Release__.

Subsection (e)(3) of § 3583 sets forth the process for revoking supervised release:

(e)    **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --

. . . .

(3)    revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e).  Further, under § 3583(h), "[w]hen a term of supervised release is revoked

and the defendant is required to serve a term of imprisonment, the court may include a requirement

that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C.

§ 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that even before

the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorized

district courts to order terms of supervised release following reimprisonment).  The court must

---

Posner of the Seventh Circuit observes regarding this omission: "From the omission of subsection 3553(a)(2)(A), the court in United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012), inferred 'that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment.'"  United States v. Thompson, 2015 WL 151609, at * 2 (7th Cir. Jan. 13, 2015)(Posner, J.).  The Court agrees with that general observation and goal.

find all violations of supervised release by a preponderance of the evidence, regardless whether the violative conduct itself constitutes criminal conduct. See 18 U.S.C. § 3583(e). This standard is different from the ones that apply to a defendant's violation of pretrial release conditions -- mere probable cause for criminal violations, and the heightened clear-and-convincing standard for noncriminal violations. See 18 U.S.C. § 3148(b)(1).

A defendant violates a supervised release condition when he or she violates the supervised release condition's express terms. For example, in United States v. Roy, 438 F.3d 140 (1st Cir. 2006), the defendant has two express supervised release conditions: (i) that he respond to the probation officer truthfully; and (ii) that he participate in a mental health treatment program. See United States v. Roy, 438 F.3d at 143. The First Circuit concludes that the defendant violates both express conditions, because he lies to his probation officer about having a relationship with a woman, and because he is terminated from a treatment program for having unapproved contact with children and being dishonest. See United States v. Roy, 438 F.3d at 143. At least one Court of Appeals concludes that, when a defendant does not participate in activities which the supervised release condition requires, the defendant violates supervised release conditions and faces revocation. In United States v. Musso, 643 F.3d 566, 570 (7th Cir. 2011), the defendant's sex offender treatment contract requires the defendant, who is convicted of possessing child pornography, to "participate in group discussions, treatment activities, and written assignments," and states that "simply showing up for sessions is not enough to be considered cooperative with treatment." 643 F.3d at 570. The United States Court of Appeals for the Seventh Circuit affirms the district judge's conclusion that, because the defendant talks about superficial personal topics instead of the core issues that bring him to treatment, frequently denies, minimizes, or uses a victim stance to avoid accountability for his actions, and does not submit his homework assignments, the

defendant does not "participate meaningfully" in sex offender treatment.  643 F.3d at 570.
Furthermore, the defendant violates additional contract terms, including possessing prohibited
sexual materials and engaging in prohibited contact with a minor.  See 643 F.3d at 570-71.
According to the Seventh Circuit, the district court, therefore, correctly revokes the defendant's
supervised release and imposes new special conditions of supervised release.  See 643 F.3d at 570.

### 3.      Sentencing Following the Revocation of Supervised Release.

Consistent with § 3583(e)(2), the Tenth Circuit explains: "When a convicted defendant
violates a condition of supervised release, the sentencing judge may revoke the term of supervised
release and impose prison time."  United States v. Patton, 506 F. App'x 729, 731 (10th Cir.
2012)(Brorby, J.)(quoting United States v. Vigil, 696 F.3d 997, 1002 (10th Cir.
2012)(O'Brien, J.)(citing 18 U.S.C. § 3584(e))).[3]  Considering the sentence, "[t]he judge must
consider [certain] factors in 18 U.S.C. § 3553(a) and the policy statements in Chapter 7 of the
Sentencing Guidelines."  United States v. Patton, 506 F. App'x at 731 (brackets in original).  See
18 U.S.C. § 3583(e).  The relevant portion of 18 U.S.C. § 3583(e) concerning revocation of
supervised release provides that "[t]he court may, after considering the factors set forth in section
3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . revoke a term of
supervised release, and require the defendant to serve in prison all or part of the term of supervised
release."  18 U.S.C. § 3583(e).  The relevant § 3553(a) factors are as follows:

---

[3]As described in the preceding section, under § 3583(h), "[w]hen a term of supervised
release is revoked and the defendant is required to serve a term of imprisonment, the court may
include a requirement that the defendant be placed on a term of supervised release after
imprisonment."  18 U.S.C. § 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13
(2000)(holding that even before the addition of Subsection (h) to the statute in 1994, a plain reading
of Subsection (e)(3) authorized district courts to order terms of supervised release following
reimprisonment).  When a defendant violates conditions of his supervised release, therefore, he
can be sentenced to imprisonment followed by further supervised release.

**(1)**    the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)**    the need for the sentence imposed --

. . .

**(B)**    to afford adequate deterrence to criminal conduct;

**(C)**    to protect the public from further crimes of the defendant; and

**(D)**    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . .

**(4)**    the kinds of sentence and the sentencing range established for --

. . . .

**(B)**    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)**    any pertinent policy statement --

**(A)**    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)**    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced; or

. . .

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  See United States v. Patton, 506 F. App'x at 731 n.2 (explaining that 18

U.S.C. § 3583(e) lists the § 3553(a) factors to be considered).[4]  The Tenth Circuit holds that at

---

[4]"Section 3583(e) does not list Section 3553(a)(2)(A) among the factors district courts should consider in modifying or revoking supervised release."  United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)(Baldock, J.).  The omitted section, § 3553(a)(2)(A), provides that, in determining the sentence to be imposed, the district court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).

The Supreme Court has not addressed whether a district court's consideration of a § 3553(a)(2)(A) factor during revocation sentencing is error.  See United States v. Miller, 608 Fed. App'x 707, 709 (10th Cir. 2015)(Baldock, J.).  The Circuits are split on the question.  See United States v. Chatburn, 505 Fed. App'x 713, 717 (10th Cir. 2012)(Matheson, Jr., J.).  The United States Courts of Appeals for the First, Second, Third, Sixth, and Seventh Circuits conclude that it is not error to consider § 3553(a)(2)(A) factors during revocation sentencing.  See e.g., United States v. Clay, 752 F.3d 1106, 1108-09 (7th Cir. 2014)(Flaum, J.); United States v. Vargas-Davila, 649 F.3d 129, 131-32 (1st Cir. 2011)(Selya, J.); United States v. Young, 634 F.3d 233, 239 (3d Cir. 2011)(Vanaskie, J.); United States v. Lewis, 498 F.3d 393, 399-400 (6th Cir. 2007)(McKeague, J.); United States v. Williams, 443 F.3d 35, 47-48 (2d Cir. 2006)(Kearse, J.).  The United States Court of Appeals for the Fifth, Ninth, and Tenth Circuits, by contrast, conclude that it is error.  See United States v. Miller, 634 F.3d 841, 844 (5th Cir. 2011)(Garza, J.); United States v. Miqbel, 444 F.3d 1173, 1182 (9th Cir. 2006)(Reinhardt, J.); United States v. Booker, 63 F.4th 1254, 1259-60 (10th Cir. 2023).  The United States Courts of Appeals for the Fourth Circuit initially joins the Fifth and Ninth Circuits, holding that, "[a]ccording to § 3553(a)(2)(A), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence 'reflect[s] the seriousness of the offense, . . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense.'"  United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006)(Shedd, J.).  But seven years later, the Fourth Circuit limits United States v. Crudup's holding in United States v. Webb:

A district court's meaningful consideration of the enumerated § 3553(a) factors when imposing a revocation sentence typically will include analysis that furthers the purposes of post-revocation incarceration.  Given that the § 3553(a)(2)(A) factors are closely related to the factors district courts are instructed to consider under § 3583(e), we fail to see how a district court's reference to the § 3553(a)(2)(A) sentencing considerations, without more, would automatically render a sentence unreasonable.  Accordingly, although a district court may not impose a revocation sentence based predominantly on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment, we conclude that mere reference to such considerations does not render a revocation sentence procedurally unreasonable when those factors

are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors.

738 F.3d 638, 641-42 (4th Cir. 2013)(Floyd, J.). The Ninth Circuit, likewise, later rules that its holding in United States v. Miqbel, 444 F.3d at 1182, does not make reliance upon a § 3553(a)(2)(A) factor improper per se, explaining:

> [W]e did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation. The seriousness of the offense underlying the revocation, though not a focal point of the inquiry, may be considered to a lesser degree as part of the criminal history of the violator . . .
>
> To ignore the new violation underlying the revocation entirely would be to ignore a key predictor of a violator's potential for reintroduction into society without relapse. The history of the violator, when combined with the violator's most recent criminal offenses, and particularly when similar to the past transgressions, is indicative of the violator's propensity for recidivism and inability to integrate peacefully into a community. A history of, for example, drug-related offenses, combined with a drug-related offense underlying revocation, as is the case here, creates a greater likelihood that the violator will relapse into the same or similar criminal activity. A violator who, after committing an offense and being placed on supervised release for that offense, again commits a similar offense is not only more likely to continue on that path, but also has demonstrated to the court that the violator has little respect for its command. Because the district court's trust in the violator's ability to coexist in society peacefully has been broken to a greater degree than if the violator had committed a minor offense of a dissimilar nature, greater sanctions may be required to deter future criminal activity. Consequently, if the nature and the severity of the underlying offense were removed from the equation altogether, the court's ability to predict the violator's potential for recidivism and to punish the violator for the violator's full breach of trust (and, ultimately, to deter the violator and to protect the public) would be impaired significantly.

United States v. Simtob, 485 F.3d 1058, 1062-63 (9th Cir. 2007)(Ezra, J.)(citations omitted).
The Court believes the solution and best practice is to always keep in mind what Judge Posner and the Third Circuit emphasize -- "that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." United States v. Thompson, 2015 WL 151609, at *2 (quoting United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012)(Fuentes, J.)). Even if the Court considers respect for the law, just punishment, and the seriousness of the offense, it should be mindful that all it does should help the defendant ease back into society after a sometimes lengthy prison sentence, and not try to punish the defendant, although sometimes punishment -- incarceration -- is needed and expressly authorized to get the defendant to do what the Court and the USPO tell him or her to do.

revocation sentencing, consideration of any other factors beyond § 3553(a), as well as any § 3553(a) factors not explicitly enumerated in § 3583(e) -- such as the need for retribution -- is improper.  See United States v. Booker, 63 F.4th 1254, 1259-60 (10th Cir. 2023).  In United States v. Booker, the Tenth Circuit applies to revocation sentencings its prior holding from United States v. Smart, 518 F.3d 800, 803-04 (10th Cir. 2008), that any consideration of sentencing factors not enumerated in § 3553(a) at sentencing is in procedural error.  See United States v. Booker, 63 F.4th at 1259.  The Tenth Circuit explains that its holding in Smart also applies to revocation sentencings "because § 3583(e) also requires courts to consider certain § 3553(a) factors when sentencing after a supervised release violation."  United States v. Booker, 63 F.4th at 1259 (citing United States v. McBride, 633 F.3d 1229, 1231 (10th Cir. 2011)).  Then, the Tenth Circuit explains "[b]ecause we read § 3583(e) to set forth those sentencing factors that courts must consider, the subsection 'implicitly forbids consideration' of any other § 3553(a) factors when modifying or revoking a term of supervised release."  United States v. Booker, 63 F.4th at 1260 (quoting Smart, 518 F.3d at 803-04).  The Tenth Circuit concludes that "the omission of § 3553(a)(2)(A) from the sentencing factors enumerated in § 3583(e) precludes a court from considering the need for retribution when modifying or revoking a term of supervised release."  United States v. Booker, 63 F.4th at 1260. The district court, thus, errs because it "directly quoted" from § 3553(a)(2)(A) when explaining

---

The Court makes one other observation.  When Congress and the Court says the word "offense" at a violation hearing, the question is whether it is referring to the underlying offense or to the violation.  The Court can consider both, but again, in meeting the goals of supervised release, the emphasis should be on the violation, not the underlying offense.  For example, when it considers the "nature and circumstances of the offense," it may consider how the defendant arrived before the Court, but its focus and emphasis in coming up with a disposition, should be on the nature and circumstances of the new violation.  If the Court is going to consider the seriousness of the offense, the seriousness of the underlying offense is largely irrelevant, unless the violation is just the same thing as the underlying offense.  In any case, the focus and emphasis, if seriousness is considered at all, should be on the seriousness of the new violation.

the reasons for Booker's sentence, and § 3553(a)(2)(A) is a factor the district court cannot consider

when modifying or revoking Booker's term of supervised release.  United States v. Booker, 63

F.4th at 1262.[5]

In particular, a district court must consider the policy statements in Chapter 7 of the

Sentencing Guidelines before imposing a sentence for violations of the conditions of supervised

release.  See United States v. Vigil, 696 F.3d at 1002; United States v. Kelley, 359 F.3d 1302,

1304-05 (10th Cir. 2004)(Ebel, J.).   The Guidelines' commentary is generally an authoritative

interpretation of the rules contained therein.  See Stinson v. United States, 508 U.S. 36, 38 (1993).

"[T]he Chapter 7 provisions dealing with violations of supervised release are not mandatory

sentencing guidelines; rather, they merely constitute advisory policy statements." United States v.

Vigil, 696 F.3d at 1002 (quoting United States v. Contreras-Martinez, 409 F.3d 1236, 1240 (10th

Cir. 2005)(Seymour, J.)(citations and quotation marks omitted)).  See United States v. Hurst, 78

F.3d 482, 483 (10th Cir. 1996)(Brorby, J.)("[T]he policy statements regarding revocation of

supervised release contained in Chapter 7 of the U.S.S.G.[, including U.S.S.G. § 7B1.4(a),] are

advisory rather than mandatory in nature"; a sentencing court simply considers them "in its

_____

[5]The Court notes that in United States v. Booker, the Tenth Circuit concludes that the
district court's error in considering § 3553(a)(2)(A) does not affect the defendant's substantial
rights.  See United States v. Booker, 63 F.4th at 1262.  The Tenth Circuit explains:

> We concluded that a single reference to punishment did not affect the defendant's
> substantial rights. [United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)].
> The court did not rely on the need for punishment in setting forth his initial reasons
> for the new sentence based upon violation of the terms of supervised release, and
> only raised it after defense counsel objected to his client receiving a high-end
> sentence.

United States v. Booker, 63 F.4th at 1263.

deliberations concerning punishment for violation of conditions of supervised release.")(citations and internal quotation marks omitted).

"All discussions of applicable sentences before a district court following the revocation of supervised release should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum." United States v. Vigil, 696 F.3d at 1002 (quoting United States v. Burdex, 100 F.3d 882, 885 (10th Cir. 1996)(Henry, J.)(citations and quotation marks omitted)).  While district courts are required to consider Chapter 7's policy statements in imposing sentences after revocation of supervised release, "[m]agic words . . . are not required to demonstrate fulfillment of this requirement." United States v. Vigil, 696 F.3d at 1002 (quoting United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005)(McKay, J.)(citations omitted)).  "Rather, it is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence." United States v. Penn, 601 F.3d at 1011.

## LAW REGARDING REVOCATION AND REVOCATION HEARINGS

Subsection (e)(3) of § 3583 permits courts to revoke supervised release on the conclusion that the defendant violated a condition of probation by a preponderance of the evidence. See 18 U.S.C. § 3583(e).  Section 3583(e)(3) sets forth the process for revoking supervised release:

(e)    **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --

. . . .

(3)    revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release,

> finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e)(bold in original).  "Preponderance of the evidence" means:

> The greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.

"Preponderance of the Evidence," Black's Law Dictionary (10th ed. 2014).

"The Sixth Amendment [to the Constitution of the United States of America] is a trial right and does not apply to pretrial proceedings."  United States v. Hernandez, 778 F. Supp. 2d 1211, 1225 (D.N.M. 2011)(Browning, J.).  The Tenth Circuit has suggested that the Sixth Amendment applies only to trial proceedings.  See United States v. Bustamante, 454 F.3d 1200, 1202 (10th Cir. 2006).  But rule 32.1 of the Federal Rules of Criminal Procedure gives the defendant at the revocation hearing "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."  Fed. R. Crim. P. 32.1(b)(2)(c).  The rule's notes instruct courts to apply a balancing test that weighs "the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it."  Rule 32.1 Advisory Committee's Note to the 2012 Amendment.  The Tenth Circuit has adopted the balancing test "when determining a releasee's confrontation rights at a revocation hearing."  United States v. Jones, 818 F.3d at 1099.  See United States v. Hernandez, 728 F. Supp. 3d 775, 779-80 (D.N.M. December 17, 2019)(Browning,

J.)(revoking supervised release after an evidentiary hearing shows a preponderance of evidence that the defendant violated his condition of supervised release by committing a New Mexico State law crime).

## ANALYSIS

The Court concludes that Hronich participates in sex offender treatment condition to the extent his special supervised release condition requires. The sex offender treatment condition instructs Hronich to "begin participating in sex offender treatment." Judgment at 4. The United States argues that Hronich violates his special supervised release condition, because he fashions an illusion of progress without earnestly trying to better himself and, therefore, does not participate in sex offender treatment services sufficiently. See Petition at 1-2. Reviewing the Treatment Condition's plain language, the Court does not agree with the USPO's argument that Hronich has not been "participating" in his treatment. Petition at 1-2. To "participate" is to "take or have a part or share of or in; to possess or enjoy in common with others; to share." Vol. XI The Oxford English Dictionary at 268 (2d ed. 1989)("Oxford English Dictionary"). See Black's Law Dictionary, at 1344 (12th ed. 2024)(defining participation as "[t]he act of taking part in something, such as a partnership, a crime, or a trial"). "Participate" is also a synonym for "partake," which, similarly, means "to take a part or share in something (as an action or condition) in common with others." Webster's Third New International Dictionary of the English Language: Unabridged at 1645-46 (1993).

None of these definitions suggests that, to participate in an activity, an individual must do the activity earnestly, or that he must, if the activity can be tracked, display some progress after partaking in the activity for some time. Dr. Castillo conflates participation with "indicating change" when Dr. Castillo explains that, during the ten months between Hronich's release from

the Bureau of Prisons and his first revocation, he "was trying to get Mr. Hronich to a point where he could participate, as he was. But he wasn't. He wasn't indicating change. He wasn't indicating that he even wanted to change, as evidenced by the final secret recording." Hearing Tr. at 133 (Castillo). Participation does not require change or progress, or even a desire to change. Here, Hronich "partake[s]" in sex offender treatment sessions. Webster's Third New International Dictionary of the English Language: Unabridged, supra, at 1645-46. Throughout treatment sessions, Hronich divulges "vulnerable thoughts," Hearing Tr. at 103 (Castillo), and "always" speaks about his ideations, see Hearing Tr. at 113 (Castillo). Hronich also tells Castillo about relapses, although he has yet to be proactive about impending relapses. See Hearing Tr. at 113 (Castillo). Hronich does not deny his attractions, deviant fantasies, or behavior. See Hearing Tr. at 128 (Castillo). The USPO's concern that Hronich is faking his way through therapy, given his history of manipulation and lack of progress, does not persuade the Court that Hronich is not "participating" in his treatment services, particularly when Hronich has attended every session, speaks to his counselors about his ideations, and does not violate any of the program's rules or regulations.

The Court finds at least one distinguishable Court of Appeals case in which a defendant actively thwarts participation in required activities, and faces revocation of supervised release. In United States v. Musso, 643 F.3d 566, 570 (7th Cir. 2011), the defendant's sex offender treatment contract requires the defendant, who is convicted of possessing child pornography, to "participate in group discussions, treatment activities, and written assignments," and states that "simply showing up for sessions is not enough to be considered cooperative with treatment." 643 F.3d at 570. The Seventh Circuit affirms the district judge's conclusion that, because the defendant talks about superficial personal topics instead of the core issues that bring him to treatment, frequently

denies, minimizes, or uses a victim stance to avoid accountability for his actions, and does not submit his homework assignments, the defendant does not "participate meaningfully" in sex offender treatment.  643 F.3d at 570.  Furthermore, the defendant violates additional contract terms, including possessing prohibited sexual materials and engaging in prohibited contact with a minor.  See 643 F.3d at 570-71.  According to the Seventh Circuit, the district court, therefore, correctly revokes the defendant's supervised release and imposes new special conditions of supervised release.  See 643 F.3d at 570.

While the Seventh Circuit uses the language "participate[s] meaningfully," the noted actions in United States v. Musso are inadequate compared to Hronich's actions in that they indicate attendance, but not participation, and much less meaningful participation.  Unlike the defendant in United States v. Musso, who merely shows up to treatment and is uncooperative, here, Hronich speaks about his ideations rather than circumvents serious discussion, and complies with the treatment requirements.  See Hearing Tr. at 103 (Castillo)(admitting that Hronich was divulging "vulnerable thoughts" to Castillo); Hearing Tr. at 128 (Castillo)( "Brandon does not deny his attractions.  He does not deny his deviant fantasies or behavior."); Hearing Tr. at 79 (Castillo)("Brandon has admitted in treatment several times that this is a fixated attraction.").  Dr. Castillo's description of a client who does not "participate" is consistent with the attributes that the Seventh Circuit identifies in United States v. Musso: "They don't communicate.  They don't share.  Or if they do, they talk about things that are irrelevant, situations that have nothing to do with being insight to self, to their emotions to their behaviors, to their identifications of attractions, to their risk."  Hearing Tr. at 129-130 (Castillo).  In contrast to Dr. Castillo's description, Hronich does not deny his attractions, deviant fantasies, or behavior.  See Hearing Tr. at 128 (Castillo).  Hronich self-discloses his secret recording of Hernandez, as well as other incidents such as

accessing pornography on a computer at his job and being around his niece and nephew, although he of course can work on more proactive disclosure of an impending relapse. See Hearing Tr. at 25 (Hernandez); id. at 108 (Castillo); id. at 33-34 (Hernandez). To use United States v. Musso's language, Hronich, therefore, "meaningfully participates," even if the special supervised release condition's plain language requires only that he participates, which he does. 643 F.3d at 570.

Hronich is the proverbial horse that USPO and supervised release can lead to water, but cannot make him drink. The Court is reluctant to reincarcerate defendants on supervised release because they do not want to succeed. A defendant may crave drugs and want to use them as soon as supervised release ends, but as long as he or she goes to the inpatient program and does what they tell him or her to do, the defendant legally is "participating." A defendant may hate his domestic partner and intends to beat her for cheating on him while he is prison after he gets through supervised release, but he is "attending and participating" in the anger management program as long as he goes and does what they tell him to do there. A defendant may intend to stop using his mental health medicines as soon as supervised release ends, but as long as he uses them while he is on supervised release, he does not violate his special supervised release condition to take all prescribed medicines as a doctor directs. These defendants may have an attitude problem, but that is not the same as having a participation problem. Hronich is like these hypothetical defendants. Muniz testifies that Hronich's struggle is with his attitude and that "Brandon's struggle is he doesn't want to do therapy." Hearing Tr. at 175-176 (Muniz). The Court is reluctant to turn the "participating" requirement -- an objective standard -- into a subjective test whether the defendant really wants to succeed.

Hronich should be careful and not take comfort in that he successfully manipulates the system one more time. He is a smart man, with 118 I.Q. See Hearing Tr. at 135 (Castillo). He is

a manipulative, dangerous, spooky, sex-crazed person. <u>See</u> Hearing Tr. at 147 (Muniz)(describing Hronich's "violent sexual fantasies" involving torture, rape, and murders of males ages four to eight, and his enjoyment in the "pain, the shock, and the look of horror on the faces"); <u>id.</u> at 154 (describing a re-occurring fantasy of kidnapping a young child in a school bathroom, taking the child to an underground cave, and sexually abusing, torturing, binding, and raping the child until Hronich achieves orgasm.); <u>id.</u> at 154-55 (Muniz)(describing a reoccurring fantasy of kidnapping a young male child, stripping and blindfolding him, and taking him to an underground labyrinth where he abuses and tortures them, and experiences orgasms). The Court is scared of Hronich and of his frightening fantasies, and that he may be a toucher, and not just a looker and fantasizer. <u>See</u> Hearing Tr. at 24 (Hernandez)(describing that a search of Hronich's home reveals items including a tarp, rope, shovel, and blankets which are consistent with his rape and torture fantasies).

Hronich needs to be careful. The Court knows what he is doing. Hronich has not yet acted, to the Court's knowledge, on his fantasies, but he could act, given that he shows a complete lack of interest in applying the tools he learns in treatment to manage his fantasies. <u>See</u> Hearing Tr. at 105 (Castillo)("He knows the skills. He knows the terminology. The application of it over the past years, since 2019, has not changed."). He has not yet, after his first revocation of supervised release, possessed child pornography, but he is at high risk of recidivism given his history of two prior convictions of possessing child pornography, and "the consistent use of deviant sexual fantasies to relieve stress, the level of manipulation, the lack of progress," as well as "his ability to manipulate people -- not just children." Hearing Tr. at 172 (Muniz). Hronich tows the line, but he should be extremely careful not to cross the line. If he crosses the line and violates his conditions of supervised release, the Court will have to protect the public. Nevertheless, as long as he does what USPO tells him to do, the Court does not think that it is intellectually honest to

say that he is not "participating." The Court concludes that Hronich is, by a preponderance of evidence, "participating." The Court does not revoke supervised release for the reason that Hronich's participation is wanting. Accordingly, the Court concludes that the United States does not show, by a preponderance of the evidence, that Hronich violates his special supervised release condition.

**IT IS ORDERED** that the Petition for Revocation of Supervised Release, filed September 24, 2024 (Doc. 62), is dismissed.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Ryan Ellison
  United States Attorney
Eva Mae Fontanez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      _Attorneys for the Plaintiff_

Joseph E. Shattuck
Marco & Shattuck Law
Albuquerque, New Mexico

      _Attorneys for the Defendant_